**REVISED January 7, 2016**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30841

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

C. RAY NAGIN, also known as Mayor Nagin,

Defendant – Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BENAVIDES, DENNIS, and COSTA, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

A federal jury convicted Defendant C. Ray Nagin of bribery, "honest-services" wire fraud, conspiracy to commit bribery and honest-services wire fraud, conspiracy to commit money laundering, and filing false tax returns. The district court sentenced Nagin to ten years in prison, imposed forfeiture in the form of a personal money judgment, and ordered Nagin to pay restitution to the federal government for unpaid taxes. On appeal, Nagin challenges the district court's jury instruction as to honest-services wire fraud as contrary to the Supreme Court's holding in *Skilling v. United States*, 561 U.S. 358 (2010).

No. 14-30841

Nagin also claims that the personal money judgment the court imposed as forfeiture was not authorized by statute and therefore constituted an illegal sentence. Alternatively, he claims that the district court erred in failing to specify that he was to bear liability for a portion of the forfeiture jointly and severally with Mark St. Pierre, one of his co-conspirators.[1] We affirm the judgment in all respects while confirming the district court's authority to correct any clerical error therein.

## I

Nagin served as Mayor of the City of New Orleans from May 2002 to May 2010. In 2013, a grand jury returned a 21-count indictment against Nagin, charging him with one count of conspiracy to commit honest-services wire fraud and bribery, six counts of bribery, nine counts of honest-services wire fraud, one count of conspiracy to commit money laundering, and four counts of filing false tax returns.

According to the indictment, during his tenure in office, Nagin solicited and accepted payments from contractors and business entities that sought business opportunities, favorable treatment, and contracts from the city. Pertinent to the honest-services wire fraud charges, in one instance, the indictment alleged that Nagin asked city contractor Frank Fradella to arrange a post-mayoralty consulting contract for Nagin in return for his support for a city lighting project contract that Fradella was pursuing. After Nagin left office, he signed a consulting contract with an affiliate of Fradella and

---

[1] Nagin also argues that the district court violated his Sixth Amendment right to a jury trial by imposing forfeiture and restitution based on the court's own factual findings, but he concedes that this argument is foreclosed by *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014), and he raises the issue only to preserve it for possible further review.

No. 14-30841

subsequently received nine wire payments, totaling $112,500, pursuant to that contract.[2]

At the close of trial, the district court instructed the jury on, *inter alia*, the elements of honest-services wire fraud, without objection from Nagin. The jury subsequently returned guilty verdicts on all counts of the indictment, except for one count of bribery. The district court sentenced Nagin to ten years in prison, imposed forfeiture in the form of a personal money judgment in the amount of $501,200.56, and ordered Nagin to pay $84,264 in restitution to the federal government for unpaid taxes. Nagin appealed.

## II

### A

Nagin did not object at trial to the district court's relevant jury instructions. We review jury instructions that were not objected to at trial for plain error. *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014). To meet the plain-error standard, Nagin must show that (1) there was error; (2) the error was clear and obvious, not subject to reasonable dispute; (3) the error affected his substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If those four prongs are satisfied, this court has the discretion to remedy the error. *Id.*

"The first step in plain-error review is to determine whether there was error." *United States v. Rodriguez-Escareno*, 700 F.3d 751, 753 (5th Cir. 2012). In reviewing jury instructions, we consider "whether the instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them."

---

[2] These nine wire payments that Nagin received after leaving office formed the predicate for the nine charges of honest-services wire fraud in his indictment.

No. 14-30841

*United States v. Ebron*, 683 F.3d 105, 151-52 (5th Cir. 2012) (citations and internal quotation marks omitted).

On appeal, Nagin challenges only the part of the district court's instruction that stated, "It is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value." Nagin argues that this part of the jury instructions was plainly erroneous in light of the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358. (2010). According to Nagin, *Skilling* held that a conviction for honest-services fraud requires proof that the official accepted a thing of value with the specific intent to be influenced by it in his official actions, and the district court's jury instructions negated this requirement. Nagin misinterprets *Skilling*.

A conviction for honest-services wire fraud requires proof that the defendant used wire communications in interstate commerce to carry out a "scheme or artifice to defraud," 18 U.S.C. § 1343, by depriving another of "the intangible right of honest services," *id.* § 1346. In *Skilling*, the Supreme Court construed § 1346 narrowly and held that honest-services fraud encompasses only bribery and kickback schemes. 561 U.S. at 408-09. To define the scope of the honest-services statute's proscription of bribes and kickbacks, the *Skilling* Court directed courts to look to, *inter alia*, federal statutes defining similar crimes, such as 18 U.S.C. § 201(b), the principal federal bribery statute. *See id.* at 412-13 & n.45.

We follow the Supreme Court's direction in *Skilling* and look to § 201(b) to give substance to the prohibition on honest-services fraud. In *United States v. Valle*, we held that an official may be convicted of bribery under § 201(b)(2) "if he has corruptly entered into a quid pro quo, knowing that the purpose behind the payment that he has . . . agreed to receive[ ] is to induce or influence him in an official act, even if he has no intention of actually fulfilling his end

4

of the bargain." 538 F.3d 341, 347 (5th Cir. 2008). Accordingly, pursuant to *Valle*, a conviction for bribery under § 201(b)(2) does not require proof that the official intended to be influenced in his official actions. *See id.* Viewed through *Skilling*'s lens, *Valle* instructs that honest-services fraud also does not require such proof. *See Skilling*, 561 U.S. at 412; *Valle*, 538 F.3d at 347.

Nagin's arguments that *Skilling* somehow overruled or superseded our definition of bribery are unavailing. The *Skilling* Court did not undertake to redefine the preexisting crimes of bribery or accepting kickbacks that must underlie honest-services fraud; it merely held that to convict a person of honest-services fraud the prosecution must prove a bribery or kickback scheme as part of the crime. *See* 561 U.S. at 408-09. The district court's jury instruction was consistent with our circuit precedent as to the crime of bribery under § 201(b)(2).

Nagin also contends that the district court's instruction allowed the jury to convict even in the absence of a quid pro quo exchange, contrary to *Skilling*. This contention is meritless. The district court's instructions as to honest-services fraud, explaining the concept of public bribery, stated very clearly that "bribery occurs when a public official accepts or offers to accept . . . anything of . . . value . . . *in return for* being influenced in his performance of an official act." (Emphasis added). The instructions also explained, "[T]he public official and the payor need not state *the quid pro quo* in express terms." (Emphasis added). The district court thus properly instructed the jury to convict only if it found a corrupt quid pro quo exchange.[3] Accordingly, we find no error in the district court's jury instructions.

---

[3] It is worth reemphasizing that this exchange need not involve the actual commission of an official act by the bribed official; it is sufficient that the official promises to be influenced by the bribe in his official actions, "even if he has no intention of actually fulfilling his end of the bargain." *Valle*, 538 F.3d at 347.

No. 14-30841

**B**

As part of Nagin's sentence, the district court rendered a personal money judgment ordering Nagin to forfeit to the United States an amount of $501,200.56.[4] Nagin contends that this personal money judgment, rather than forfeiture of specific property, was not authorized by statute. Although Nagin did not raise this objection at sentencing, we review it de novo because he claims that this element of his sentence is illegal. *See United States v. Nolen*, 472 F.3d 362, 382 & n.52 (5th Cir. 2006) ("[A]n illegal sentence always constitutes plain error." (citing *United States v. Del Barrio*, 427 F.3d 280, 282 & nn. 3-4 (5th Cir. 2005)).

In imposing the money judgment on Nagin, the district court invoked 18 U.S.C. § 981(a)(1)(C), which authorizes civil forfeiture of the proceeds of certain offenses, and 28 U.S.C. § 2461(c), which permits the government to seek criminal forfeiture whenever a civil or criminal forfeiture is authorized by statute and the defendant is found guilty of the relevant offense. 18 U.S.C. § 981(a)(1)(C) provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" certain offenses. Nagin contends that this statute does not authorize personal money judgments because it does not expressly provide for this form of forfeiture. We have already rejected a similar argument, however, in the context of an analogous statute.

In *United States v. Olguin*, we held that 21 U.S.C § 853 authorizes personal money judgments as forfeiture for violations within the scope of that statute. 643 F.3d 384, 395 (5th Cir. 2011). The text of 21 U.S.C. § 853(a) is

---

[4] A personal money judgment is an *in personam* judgment against the defendant rather than an *in rem* judgent against specified property. *See, e.g.*, *United States v. Casey*, 444 F.3d 1071, 1075-76 (9th Cir. 2006) (discussing *in personam* nature of money judgment forfeitures).

substantively identical to that of 18 U.S.C. § 981(a)(1)(C), and it similarly does not expressly provide for personal money judgments. *Compare* 21 U.S.C. § 853(a) ("any property constituting or derived from any proceeds the person obtained, directly or indirectly as a result of the violation" is subject to forfeiture), *with* 18 U.S.C. § 981(a)(1)(C) ("any property, real or personal, which constitutes or is derived from proceeds traceable to [certain violations]" is subject to forfeiture). In *United States v. Monsanto*, the Supreme Court rejected a defendant's argument that 21 U.S.C. § 853 does not authorize the forfeiture of funds used to pay attorney's fees. 491 U.S. 600, 607 (1989). The Court explained, "Congress could not have chosen . . . broader words to explain what was to be forfeited." *Id.* In *Olguin*, we stated regarding 21 U.S.C. § 853, "The text of the [statute] is plain and unambiguous, and we handle it according to its plain meaning." 643 F.3d at 395-96. Citing *Monsanto* and pointing to 21 U.S.C. § 853's broad definition of "property" as "real property . . . [and] tangible and intangible personal property," we explained we were "reluctant to create an exception for [the defendant's] personal money." *Olguin*, 643 F.3d at 396. Thus, we concluded that 21 U.S.C. § 853 authorized personal money judgments. *Id.* at 396-97.

Our reasoning and holding in *Olguin* are readily applicable to 18 U.S.C. § 981(a)(1)(C). The Supreme Court's statement in *Monsanto* that "Congress could not have chosen . . . broader words to explain what was to be forfeited," 491 U.S. at 607, applies with equal force to 18 U.S.C. § 981's broad language. Under 18 U.S.C. § 981(a)(1)(C), "personal property" is subject to forfeiture. Personal property means "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Property*, BLACK'S LAW DICTIONARY (10th ed. 2014). Similar to the text of 21 U.S.C. § 853(a), nothing in 18 U.S.C. § 981(a)(1)(C)'s text excludes personal money judgments. *See Olguin*, 643 F.3d at 395-97.

No. 14-30841

Moreover, the exclusion of personal money judgments would undermine the purpose of criminal forfeitures.  In *United States v. Hall*, the First Circuit explained:

> There are two primary reasons for permitting money judgments as part of criminal forfeiture orders.  First, criminal forfeiture is a sanction against the individual defendant rather than a judgment against the property itself.  Because the sanction follows the defendant as a part of the penalty, the government need not prove that the defendant actually has the forfeited proceeds in his possession at the time of conviction.  Second, permitting a money judgment, as part of a forfeiture order, prevents a [defendant] from ridding himself of his ill-gotten gains to avoid the forfeiture sanction.

434 F.3d 42, 59 (1st Cir. 2006) (citations and internal quotation marks omitted).  Thus, although neither 18 U.S.C. § 981(a)(1)(C) nor 28 U.S.C. § 2461(c) expressly refers to personal money judgments, our sister circuits have uniformly agreed that personal money judgments are a proper form of criminal forfeiture under these statutes.  *See, e.g., United States v. Newman*, 659 F.3d 1235, 1242-43 (9th Cir. 2011); *United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008); *United States v. Day*, 524 F.3d 1361, 1377-78 (D.C. Cir. 2008).

The amount of a personal money judgment is measured by the proceeds of the defendant's illegal activity, rather than the amount of assets he retains at the time of sentencing.  *E.g., Day*, 524 F.3d at 1377-78.  Following *Olguin*'s analysis, we join our sister circuits in holding that the combined operation of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) authorizes personal money judgments as a form of criminal forfeiture.[5]

---

[5] There is no consensus among the circuits over whether the government must make a showing that satisfies the requirements of 21 U.S.C. § 853(p)(1)'s substitute-asset

No. 14-30841

## C

As a general matter, co-conspirators subject to criminal forfeiture are held jointly and severally liable for the full amount of the proceeds of the conspiracy. *See United States v. Edwards*, 303 F.3d 606, 643 (5th Cir. 2002). The district court correctly stated the law, but both Nagin and the Government agree that due to a clerical error the district court's judgment does not specifically state that Nagin is to bear liability for an $8,133.85 portion of the amount forfeited jointly and severally with Mark St. Pierre, one of his co-conspirators.   Any clerical error relating to the joint and several liability designation of any portion of Nagin's forfeiture is correctable under Federal Rule of Criminal Procedure 36. *See* FED. R. CRIM. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment."); *see also United States v. Quintero*, 572 F.3d 351, 353 (7th Cir. 2009) ("[T]he failure to include forfeiture in a judgment, that everyone intended to be included, constitutes a clerical error, correctable under Rule 36.*"*). The parties may therefore move the district court to correct the judgment in this respect.

## III

For these reasons, we AFFIRM the judgment in all respects without affecting the district court's authority to correct any clerical errors therein.

---

provisions as a precondition to imposing a personal money judgment under 28 U.S.C. § 2461(c). *Compare Newman*, 659 F.3d at 1242-43 (Ninth Circuit holding no substitute-assets showing required), *with United States v. Abdelsalam*, 311 F. App'x 832, 847 (6th Cir. 2009) (holding "government must comply with the requirements of Section 853(p)(1)" to obtain a personal money judgment).  We need not decide this issue, however, because Nagin concedes that the record evidence in his case would satisfy 21 U.S.C. § 853(p)(1)'s requirements.