JUDGE MAZZANT
This matter is before the Court on the Government's Response to the Order Overruling its Prior Objections [Dkt. # 119] and the Jordans' Objections to the Government's Proposed Instructions [Dkt. # 126].
BACKGROUND
The Government alleges that, while serving as Mayor of Richardson, Defendant Laura Jordan exchanged votes on apartment development projects for cash, sex, and luxury hotel stays, among other benefits from fellow Defendant Mark *672 Jordan, the apartment developer. The Jordans are charged with Honest Services Wire Fraud based on bribery in violation of 18 U.S.C. §§ 1343, 1346. The corresponding Fifth Circuit Pattern Jury Instructions (the "Pattern Instructions") advise that bribery should be defined "pursuant to 18 U.S.C. §§ 201(b) or 66[6] or state law." See FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases) §§ 2.57 (2015). Sections 201 and 666 are similar but not identical. Section 201 criminalizes the offer or receipt of "anything of value" to influence a federal official in the performance of an official act. 18 U.S.C. § 201(b). Section 666, on the other hand, criminalizes corruptly giving or receiving anything of value with the intent to influence or reward an agent for a state or local government, among other entities, that receive $ 10,000 in federal funds per year. Id. § 666. Because Ms. Jordan was a local official at the time of the alleged bribery scheme, the Court found that bribery must be defined pursuant to 18 U.S.C. § 666 or the state bribery statute (Dkt. # 91 at p. 7).
Despite previously stating that it would "so define bribery" (Dkt. # 68 at pp. 7-8),[1] the Government objected to the Court's Order (Dkt. # 93). The Government argued that any definition consistent with the concept of public bribery is sufficient and that, to the extent bribery should be defined to a particular statute, it can be defined pursuant to § 201 (Dkt. # 68 at pp. 8-10). Although the Government may have been judicially estopped from raising these arguments, see New Hampshire v. Maine , 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (explaining that judicial estoppel is an equitable doctrine that seeks to " 'prevent[ ] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase' ") (quoting Pegram v. Herdrich , 530 U.S. 211, 226 n.8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ), out of an abundance of caution, the Court considered the objections and found them unconvincing (see Dkt. # 111). The Court then directed the Government to define bribery pursuant to either 18 U.S.C. § 666 or the state bribery statute, and directed both parties to submit revised jury instructions consistent with the Government's election.
The Government has since filed additional objections,[2] but has also indicated that it would elect to define bribery pursuant to § 666 if required to comply with the Court's Order.[3] The Parties then submitted new proposed jury instructions assuming that § 666 applies, which reveal additional *673 disagreements on how to advise the jury on honest services wire fraud.
LEGAL STANDARDS
A trial court has wide discretion on how jury instructions are to be prepared. See Dahlen v. Gulf Crews, Inc. , 281 F.3d 487, 494 (5th Cir. 2002) (explaining that the Fifth Circuit "reviews challenges to jury instructions for abuse of discretion" based on a review that is "exceedingly deferential to the trial court"). This discretion does not, however, relieve the court of its independent obligation " 'to charge the jury on all essential questions of law, whether requested or not.' " See Kelly v. South Carolina , 534 U.S. 246, 256, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002) (quoting C. Wright, Federal Practice and Procedure § 485, p. 375 (3d ed. 2000) ). After all, " '[t]he primary purpose of jury instructions is to define with substantial particularity the factual issues, and clearly instruct the jurors as to the principles of laws which they are to apply in deciding the factual issues involved in the case before them.' " See United States v. Cronn , 717 F.2d 164, 170 (5th Cir. 1983) (quoting United States v. Gilbreath , 452 F.2d 992, 994 (5th Cir. 1971) ). This means that the jury instructions must at least ensure the Government satisfies "its burden to prove each element of the crime beyond a reasonable doubt." See Ducros v. Cain , No. 09-6977, 2011 WL 1885478 at *10 (E.D. La. Apr. 25, 2011) (citing Francis v. Franklin , 471 U.S. 307, 325-36, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) ).
ANALYSIS
The Parties dispute whether bribery should be defined pursuant to a particular bribery statute, as the Court has previously ordered,[4] and how to advise the jury even assuming it should be. The Court addresses these issues in turn.
I. The Government's Objections to Defining Bribery Pursuant to a Specific Statute
The Parties dispute how to advise the Jury on Honest Services Wire Fraud based on bribery under 18 U.S.C. §§ 1343, 1346. Section 1343 criminalizes "schemes to defraud," which § 1346 defines to include schemes to deprive the public of honest services. 18 U.S.C. §§ 1343, 1346. To save § 1346 from being impermissibly vague, in Skilling v. United States , the Supreme Court interpreted "honest services" narrowly "to encompass only bribery and kickback schemes." 561 U.S. 358, 412, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). The Supreme Court found this interpretation definite and consistent with congressional intent because § 1346 was "draw[n] from federal statutes proscribing-and defining-similar crimes." See id. at 412-13, 130 S.Ct. 2896. The Fifth Circuit has since held that prosecutions for honest services wire fraud under §§ 1343, 1346 may be based on violations of an underlying federal or state bribery or kickback statute. See United States v. Teel , 691 F.3d 578, 584 (5th Cir. 2012) ("[W]e read *674 Skilling as recognizing that § 1346 prosecutions may involve misconduct that is also a violation of state law.").
The Government contends that bribery does not need to be defined pursuant to a particular statute. It, instead, maintains that any definition consistent with the concept of public bribery is sufficient. The Court disagrees. United States v. Brumley is instructive. 116 F.3d 728, 733-35 (5th Cir. 1997) (en banc). In that case, an en banc panel of the Fifth Circuit considered the extent to which the honest services statute governed conduct by state officials. The Fifth Circuit noted that, by its plain meaning, the deprivation of "honest services" contemplates that a public official has consciously acted unfaithfully to the interests of her employer-as opposed to conduct simply amounting to the appearance of impropriety. See itation case-ids="11978894" index="31" url="https://cite.case.law/f3d/116/728/#p733">id. at 734. The Fifth Circuit consequently held that, to commit honest services wire fraud, the state official must have engaged in conduct "close to bribery." See itation case-ids="11978894" index="32" url="https://cite.case.law/f3d/116/728/#p733">id. After all, an employee has not acted unfaithfully simply because there is an appearance of impropriety.
But because there was "nothing to suggest that Congress was attempting in § 1346 to garner to the federal government the right to impose upon states a federal vision of appropriate services-to establish, in other words, an ethical regime for state employees," the Fifth Circuit added that a state official can be charged with the deprivation of honest services only if she has also violated a duty owed under state law. See id. at 734 (adding that there was nothing to suggest that Congress meant "to leave to courts and prosecutors, in the first instance, the power to define the range and quality of services a state employer may choose to demand of its employees"). It reasoned that "[s]uch a taking of power would sorely tax separation of powers and erode our federalist structure." See id. This meant that, after Brumley , a defendant could commit honest services wire fraud through bribery only if she violated a statute applicable to her by engaging in conduct close to bribery-as opposed to conduct that would violate a mere gratuity statute. See ids="11978894" index="35" url="https://cite.case.law/f3d/116/728/#p733">id. (citing United States v. Sawyer , 85 F.3d 713, 734-35 (1st Cir. 1996) ).
The Fifth Circuit has reiterated Brumley 's holding on several occasions, see, e.g. United States v. Whitfield , 590 F.3d 325, 348 (5th Cir. 2009), even after other appellate courts reached contrary conclusions, see Sorich v. United States , 555 U.S. 1204, 129 S.Ct. 1308, 173 L.Ed.2d 645 (2009) (Dissenting, Scalia, J.) (Justice Scalia dissenting to a denial of certiorari in light of a circuit split between Brumley and Seventh Circuit authority on whether honest services wire fraud must be based on the violation of state law). For instance, in Whitfield , two former Mississippi judges (the "State Judges") were charged with honest services wire fraud based on bribery, as defined by a Mississippi statute. The State Judges argued that the jury instructions failed to require the Government to prove an explicit quid pro quo in connection with the bribery scheme at issue. In rejecting this argument, the Fifth Circuit explained that:
(1) Brumley requires " 'a federal prosecutor [to] prove that conduct of a state official breached a duty ... owed to the official's employer under state law" to the extent the state statute "concern[s] 'something close to bribery,' "[5]
*675 (2) The Mississippi statute informing the jury instructions "prohibits giving things of value to an official 'with intent to influence his vote, opinion, action or judgment on any question, matter, cause or proceeding which may be then pending, or may be thereafter subject to vote, opinion, action or judgment' of the official"; and that
(3) This instruction necessarily amounted to bribery-even assuming that a quid pro quo is the distinguishing feature of a bribe-since the instruction required the jury to find a "corrupt agreement" to exchange something of value with an "intent to influence" official action.
Whitfield , 590 F.3d at 348. As further evidence that the jury instructions based on the Mississippi statute, indeed, required proof of conduct "close to bribery," the Fifth Circuit noted that the jury instructions were substantially similar to the pattern instructions for § 201, the bribery statute applicable to federal officials.[6] In other words, the Fifth Circuit found the jury instructions sufficient because, "consistent with Brumley ," they were based on the violation of a statute governing the conduct of state officials that criminalized bribery. See ids="3503969" index="42" url="https://cite.case.law/f3d/590/325/#p348">id.
The Government maintains that bribery does not need to be defined pursuant to a particular statute. This is because, according to the Government, the Supreme Court overturned Brumley in Skilling by establishing a "uniform national standard" on how bribery should be defined for purposes of the honest services statute. This interpretation does not pass muster. In Skilling , the defendant argued that his honest services wire fraud conviction should be overturned because the honest services statute was impermissibly vague. As the Supreme Court acknowledged, appellate courts largely disagreed on whether honest services included bribes and kickbacks, or additional conduct such as the receipt of gratuities. To save the statute from unconstitutionality, the Supreme Court defined honest services narrowly to include only bribery or kickback schemes. This meant that, although the honest services statute survived, the defendant's honest services wire fraud conviction would be reversed since "[t]he Government did not, at any time, allege that Skilling solicited or accepted side payments from a third party in exchange for making the[ ] misrepresentations" at issue. See Skilling , 561 U.S. at 414, 130 S.Ct. 2896. In short, the Supreme Court was setting a national uniform standard that honest services wire fraud only applied to bribery and kickback schemes, and no other conduct. See Teel , 691 F.3d at 583-84 (discussed further below). The Supreme Court was not providing a singular definition for "bribery." See ids="3510005" index="46" url="https://cite.case.law/f3d/691/578/#p584">id.
*676 Skilling , if anything, reinforces that bribery should be defined pursuant to a particular statute applicable to those involved in the bribery scheme. The Supreme Court found its interpretation of "honest services" sufficiently definite and faithful to congressional intent because:
[ Section 1346's] prohibition on bribes and kickbacks draws content not only from the pre-McNally case law, but also from federal statutes proscribing-and defining-similar crimes, [such as] 18 U.S.C. § 201 ; 18 U.S.C. § 666 ; [and] 41 U.S.C. § 52(2)."
See index="50" url="https://cite.case.law/citations/?q=41%20U.S.C.%20%C2%A7%2052">id. at 412-13, 130 S.Ct. 2896 (citing Whitfield , 590 F.3d at 352-53, among other cases). Adopting the Government's position-that Skilling established one singular, definition of bribery based on bits and pieces of other statutes, which may or may not ordinarily apply to the defendant-would implicate the vagueness concerns (raised in Justice Scalia's concurrence) that the Supreme Court was trying to avoid. See ids="3503969" index="53" url="https://cite.case.law/f3d/590/325/#p348">id. at 415, 130 S.Ct. 2896 (Concurring, Scalia, J.) (arguing that the honest services statute should have been struck down entirely since " § 1346 fails to provide fair notice and encourages arbitrary enforcement"). The public presumably has notice of conduct that would result in an honest services wire fraud violation if that conduct is prohibited by another criminal statute-such as statutes which prohibit conspiracy or attempt crimes. But notice may be lacking if any definition consistent with the concept of public bribery is sufficient. After all, the fact that there are multiple bribery statutes suggests a lack of consensus on how public bribery should be defined and criminalized, see 18 U.S.C. § 201 ; 18 U.S.C. § 666 ; TEX. PENAL CODE § 36.02 -as does the Government's reluctance to commit to defining bribery pursuant to any one statute.[7]
The Fifth Circuit has, in fact, repeatedly found that Skilling did not create a national standard defining bribery. In Teel , the Fifth Circuit considered whether Skilling constituted an intervening change in law that would require overturning Whitfield (and, in turn, Brumley ). In finding these cases largely unaltered-and rejecting the defendant's argument that Skilling "establish[ed] a uniform national standard" defining bribery pursuant to federal law-the Fifth Circuit noted that, in Skilling , the Supreme Court:
(1) "[C]ites approvingly to Whitfield for [the Fifth Circuit's] analysis of the district court's jury instructions regarding bribery,"
(2) Acknowledged (in the corresponding footnote) that § 1346 was meant to apply to federal, state, and local officials, and, *677 (3) Explained that "[t]he principal federal bribery statute, [ 18 U.S.C.] § 201 ] ... generally applies only to federal public officials."
See Teel , 691 F.3d at 583-84 (citing Skilling , 561 U.S. at 412-13 & n.45, 130 S.Ct. 2896 ).[8]
For these reasons, an honest services wire fraud charge against an official must be based on a violation of a particular bribery statute governing that official's conduct. See United States v. Sanchez , 502 F. App'x 375, 381-82 (5th Cir. 2012) (interpreting Teel ). The Fifth Circuit has, in fact, since found that a district court errs by advising the jury on the wrong bribery (or kickback) statute in an honest services wire fraud case. See ids="3771619" index="61" url="https://cite.case.law/f-appx/502/375/#p381">id. ("As stated in Teel, Skilling 's"uniform national standard" does not obviate the requirement that a state official, when prosecuted under § 1346, owe a state-law duty. Therefore, the federal-law based instructions in this case constituted error.").
The Government argues that, in United States v. Nagin , the Fifth Circuit blessed jury instructions that were consistent with the public concept of bribery, which purportedly means that bribery need not be defined pursuant to a particular statute. 810 F.3d 348, 351 (5th Cir. 2016). The Court fails to see how Nagin provides support for the Government's position. Unlike Brumley , Teel , and Sanchez , the defendant in Nagin did not challenge jury instructions for honest services wire fraud for defining bribery pursuant to either a state or federal bribery statute. The defendant, instead, faulted the jury instructions only for advising that it "is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value." See Nagin , 810 F.3d at 351. And, in rejecting that argument, the Fifth Circuit looked to a specific bribery statute to determine whether or not such an instruction was appropriate. Accordingly, Nagin appears to reaffirm that jury instructions for an honest services wire fraud charge under §§ 1343, 1346 must be based on a violation of some underlying bribery (or kickback) statute.
The Court acknowledges that, in Nagin , the Fifth Circuit looked to 18 U.S.C. § 201 to determine whether the disputed instruction regarding the acceptance of a thing of value was properly given-even though the defendant was a local official. This arguably suggests that-contrary to Brumley , Whitfield , Teel , and Sanchez - § 201's definition of bribery can be used to support an honest services wire fraud charge in this case. But there is no indication that Nagin intended to overturn these cases, or that it could. "It is a well-settled Fifth Circuit rule of orderliness that one panel ... may not overturn another panel's decision, absent an intervening change in the law ... or our en banc *678 court." See Jacobs v. Nat'l Drug Intelligence Ctr. , 548 F.3d 375, 378 (5th Cir. 2008). Neither of these circumstances apply here. Nagin was not decided en banc. And, in Teel , the Fifth Circuit already found that Skilling did not constitute an intervening change in in law where the defendant is charged with a bribery scheme. See Teel , 691 F.3d at 584 ("[A]lthough Skilling changed the law of honest-services fraud to exclude the conflict-of-interest category of cases from § 1346's scope, this is not an intervening change of law as applied to the facts of this case because Appellants were charged with bribery schemes."). Additionally, unlike Brumley , Teel , and Sanchez , the Fifth Circuit was not directly asked to consider whether the lower court erred by defining bribery pursuant to a particular statute.
The Court thus sees no reason to reconsider its determination that bribery must be defined pursuant to a statute specifically applicable to the Jordans-consistent with the Pattern Instructions. See Whitfield , 590 F.3d at 354 ("It is well-settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law") (citing United States v. Turner , 960 F.2d 461, 464 (5th Cir. 1992) ). Laura Jordan was allegedly a local official at all relevant times, meaning that 18 U.S.C. § 201 does not apply. See Teel , 691 F.3d at 584 ("The principal federal bribery statute, [ 18 U.S.C.] § 201... generally applies only to federal public officials."). Bribery must therefore be defined pursuant to 18 U.S.C. § 666, TEX. PENAL CODE § 36.02, or both. See Sanchez , 502 F. App'x at 381 ; Teel , 691 F.3d at 584 ; Whitfield , 590 F.3d at 348 ; Brumley , 116 F.3d at 734 (each indicating that a state official cannot be charged under § 201-with Sanchez finding that a court erred for doing so); see also United States v. Grace , 568 F. App'x 344, 350 (5th Cir. 2014) (applying 18 U.S.C. § 666's definition of bribery to determine the contours of an honest services wire fraud charge against a local official). Because the Government has indicated that it would define bribery pursuant to 18 U.S.C. § 666 if forced to choose between these statutes, the Court will look to that statute to give substance to the definition of bribery.
II. The Parties' Remaining Disputes
The Court now turns to the Parties' remaining disagreements on how to advise the jury on honest services wire fraud charge as well as any other charges.[9] Because "[i]t is well-settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law," see Whitfield , 590 F.3d at 354 (citing Turner , 960 F.2d at 464 ), the Court will deviate from the Pattern Instructions only where doing so clarifies the charge or corrects a misstatement of law.
a. One or Two Sets of Instructions
To ensure that the jury properly considers each of the charges against them separately, the Jordans request that there are two sets of instructions given for honest services wire fraud-one applicable to the counts pertaining to Laura Jordan and the other applicable to the count pertaining to Mark Jordan. The Government has not responded to this request-even if its formal instructions include one set for both Defendants. And the Court sees no reason not to do so, especially since § 666 separates the act of offering something of value and the act of receiving something of value *679 into different subparts. Compare 18 U.S.C. § 666(a)(1)with 18 U.S.C. § 666(a)(2). Providing two sets of instructions for the counts as to each Defendant will help clarify the instructions. See Kelly , 534 U.S. at 256-57, 122 S.Ct. 726 (explaining that courts must ensure that the jury instructions are sufficiently clear).
b. How § 666 Defines Bribery
The Jordans argue that, because § 666 prohibits corruptly offering or receiving something of value with the intent to "influence or reward ," § 666 criminalizes bribery and gratuities. 18 U.S.C. § 666 (emphasis added). They conclude that, to properly define "bribery" pursuant to § 666, the Court should omit language regarding a "reward" since that only applies to § 666's prohibition on the receipt of gratuities.[10] The Court agrees. The Seventh Circuit's decision in United States v. Hawkins is instructive. 777 F.3d 880 (7th Cir. 2015) (Easterbrook, J.). In that case, the defendants appealed their conviction for honest services mail fraud under 18 U.S.C. § 1341, et seq. They argued that the jury instructions improperly defined bribery to include accepting "anything of value from another person corruptly intending to be influenced or rewarded" pursuant to Section 666. See Hawkins , 777 F.3d at 882-83. The Seventh Circuit agreed and remanded the case. The Seventh Circuit reasoned that, to commit honest services mail fraud, the items of value in question must have been offered or received with an intent to influence -as opposed to a mere intent "to reward"-as evident from the Supreme Court's decision to "reverse[ ] Skilling's conviction because he did not accept anything of value 'in exchange for' making [the] misrepresentations" at issue. See id. (quoting Skilling , 561 U.S. at 413, 130 S.Ct. 2896 ).
The Court sees no reason to find differently. The Fifth Circuit has explained that statutes which merely target the appearance of impropriety-without requiring an intent to influence a public official-would not constitute bribery for purposes of honest services fraud. See, e.g., Brumley , 116 F.3d at 734-35 ; see also Sawyer , 85 F.3d at 729-30 (explaining that a statute that criminalizes only an "intent to 'reward' an official for an act taken in the past or to be taken in the future" would not amount to honest services fraud since such a finding "requires, in connection with the gratuity, the intent to cause an official to deviate from the honest performance of services"). The Fifth Circuit has also explained that § 666 criminalizes bribery and gratuities. For instance, in United States v. Duvall , the defendant faulted jury instructions for failing to advise that the receipt of unsolicited gifts or gratuities would not "constitute the offenses charged in the indictment," namely bribery pursuant to § 666. 846 F.2d 966, 971 n.6 (5th Cir. 1988). In rejecting this argument, the Fifth Circuit noted that (1) § 666 criminalized bribery and gratuities, but (2) assuming that the Government was required to prove that bribery occurred in light of how the indictment was written, the evidence supported such a conviction nevertheless. See Duvall at 971-72 & n.6 ; see also Sorich , 555 U.S. at 1204, 129 S.Ct. 1308 (Justice Scalia stating that § 666(a) prohibits "bribes and gratuities to public officials" in a dissent to a denial of certiorari).
The Court will therefore define bribery pursuant to Section 666's terms after omitting *680 any references to an intent "to reward."
c. Section 666's Other Elements
The Jordans object to the Government's Proposed Instructions because they do not ensure that every element underlying a violation of § 666 is satisfied. The Government's Proposed Instructions omit, for instance, the requirement that the transaction amounting to a bribe concern "anything of value of $ 5,000 or more," and that Laura Jordan was an agent for a local government entity that received more than $ 10,000 in federal funds a year (see Dkt. # 122 at p.3). The Court agrees with the Jordans. As explained, the Fifth Circuit has repeatedly acknowledged that bribery statutes are not interchangeable for purposes of an honest services charge under § 1346. See supra at pp. 673-78 (discussing Sanchez , 502 F. App'x at 381 ; Teel , 691 F.3d at 584 ; Whitfield , 590 F.3d at 348 ; Brumley , 116 F.3d at 734 ). It follows that, when defining bribery pursuant to a particular statute, an honest services wire fraud conviction requires a finding that the defendant actually violated that underlying statute. See Brumley , 116 F.3d at 734 ("Stated directly, the official must act or fail to act contrary to the requirements of his job under state law. This means that if the official does all that is required under state law , alleging that the services were not otherwise done "honestly" does not charge a violation of the mail fraud statute.") (emphasis added).
The Government argues that, because the honest services wire fraud statute already contains an interstate commerce requirement, the jurisdictional hooks in § 666 are unnecessary. But in Brumley , the Fifth Circuit refused to find that § 1346 imposed "a federal vision of appropriate services-to establish, in other words, an ethical regime for state employees." See id. at 734. The "jurisdictional hook"-which requires that Laura Jordan was an agent of an entity that received at least $ 10,000 in federal funds per year-ensures that, consistent with Brumley , the honest services wire fraud statute only imposes an ethical regime for state or local employees to the extent the federal government has a financial interest in the state or local government's affairs and not over all state employees.
d. Instructions on a Fiduciary Duty, a Possible Motive to act Corruptly, and the Likelihood that Someone acts with a Single Purpose
The Jordans object to excerpts of the Government's proposed instructions that touch on the fiduciary duty officials owe to the public, the reasons why people may act "corruptly," and the likelihood in which people act with a single purpose (Dkt. # 122 at pp. 2-3).[11] The Jordans argue that these statements are better suited for the Government's closing argument. The Court agrees. An instruction that a public official owes a duty to provide "disinterested service to the public and the government she serves" (Dkt. # 122 at pp. 2-3) is improper because, even if correct, the jury may mistakenly believe that they can convict the Jordans for honest services wire fraud based on a mere conflict of interest. See Teel , 691 F.3d at 583 (explaining that Skilling "was establishing a uniform national standard by construing § 1346 to clearly exclude conduct outside of bribery and kickbacks, such as conflict-of-interest schemes"). An instruction advising that "[t]he motive to act corruptly is ordinarily a hope or expectation of either financial gain or other benefit to oneself" (Dkt. # 122 at pp. 2-3) is also improper.
*681 The jury should determine whether the Jordans acted corruptly based on their perception of the evidence in this case-without the Court suggesting that, if the Government can prove that the Jordans had a financial motive to act corruptly, the Jordans likely acted corruptly. And an instruction advising that "people rarely act for a single purpose" may lead to the improper inference that, as a result, the Jordans were also likely to act with more than one motive.[12] Again, such a determination should be based on the evidence.
e. Instruction on Furnishing Sexual Services
The Jordans argue that the Government's proposed instruction that "[a]nything of value" can include intangible items, such as furnishing sexual services is improper. The Court disagrees. The Fifth Circuit has found that "intangibles," including sexual services, constitute a "thing of value" under § 666 and can be used to support the $ 5,000 threshold § 666 requires. See United States v. Marmolejo , 89 F.3d 1185, 1192-94 (5th Cir. 1996). It explains that, "[t]o decide whether a transaction involving intangibles has a value of $ 5,000 or more, courts should look to traditional valuation methods," for instance, "by looking at how much a person in the market would be willing to pay" for those intangibles. See ids="9046547" index="105" url="https://cite.case.law/f3d/89/1185/#p1192">id. at 1194. The Jordans appear to argue that, based on their assessment of the evidence, the Government will be unable to establish that any sexual services exchanged had any particular value (Dkt. # 88 at p.11).[13] But this is for the Government to prove and the jury to decide. It would be premature to prevent the jury from making this determination. Accordingly, because the Government's requested instruction is based on a correct statement of law and because it may not be immediately obvious to the jury that intangibles can constitute a thing of value, the Court finds this instruction appropriate. The Jordans' objection to this instruction will be overruled as a result.
CONCLUSION
Accordingly, the Government's Second Set of Objections to the Court's Order on the Jury Instructions [Dkt. # 119] are OVERRULED , the Jordans' Objections to the Government's Proposed Jury Instructions [Dkt. # 126] are SUSTAINED IN PART and OVERRULED IN PART , and the Jordans' Initial Set of Objections [Dkt. # 88] are OVERRULED AS MOOT . The Court will thus prepare jury instructions consistent with this Order.

The Jordans previously moved to dismiss Counts 1-4, or alternatively, moved for a bill of particulars, arguing that the Indictment should have identified which of three potential bribery statutes the Government would use to define bribery. The Government responded by casting the Jordans' motion as moot, arguing that § 201 is inapplicable since it applies to federal officials, that the two other statutes are substantially similar, and that it would define bribery pursuant to a particular statute in its proposed jury instructions anyways (see Dkt. # 68 at pp.7-8).

As the Court explained at a hearing on this filing, the Government did not actually seek any relief from the Court. It, instead, explained why it believed it could not comply with the Court Order (see Dkt. # 119). There is thus nothing for the Court to rule on. See Fed. R. Crim. P. 47 ("A motion must state the grounds on which it is based and the relief or order sought. ") (emphasis added). The Court nevertheless construes this filing as an Objection to the Court's Order, which the Court will consider out of an abundance of caution.

The Government made this representation at a hearing where the Court explained that it was unconvinced by the Government's arguments and that, regardless of whether the Government agreed with the Court's reasoning, it was bound by the Court's orders. See Cocke, for Use of Commercial Bank of Commerce v. Halsey , 41 U.S. (16 Pet.) 71, 87, 10 L.Ed. 891 (1842) ("[I]n every instance in which a tribunal has decided upon a matter within its regular jurisdiction, its decision must be presumed proper, and is binding until it shall be regularly reversed by a superior authority.").

The Government insinuates that the Court has raised these concerns, sua sponte, without objection from the Jordans. The record reflects otherwise. The first paragraph of the Jordans' initial Objections to the Government's Proposed Jury Instructions state that, "[o]ne point that requires elaboration outside the pattern is the definition of "bribery" under the honest services counts. The Pattern Instructions themselves call for the Court to define "bribery" in accordance with one of two federal bribery statutes or in accordance with state law. FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS at 294-95 (2015 ed.)" (Dkt. # 88 at p. 1).

More specifically, the Fifth Circuit stated that, "In United States v. Brumley , we held that, in order to convict for the federal crime of depriving a state of the honest services of one of its officials, 'a federal prosecutor must prove that conduct of a state official breached a duty respecting the provision of services owed to the official's employer under state law.' 116 F.3d 728, 734 (5th Cir.1997) (en banc). However, we were careful to note that, in order to constitute a federal crime, the state statute must concern 'something close to bribery' and that 'the mere violation of a gratuity statute ... will not suffice." Id. Consistent with that opinion and at the request of all parties, the district court based its definition of bribery in the jury charge on the Mississippi offense of bribery, which prohibits giving things of value to an official "with intent to influence his vote, opinion, action or judgment on any question, matter, cause or proceeding which may be then pending, or may be thereafter subject to vote, opinion, action or judgment" of the official. Miss. Code Ann. § 97-11-11 (1972)." Whitfield , 590 F.3d at 348 (emphasis in original).

Although the Government suggests otherwise, this reference does not indicate that the Fifth Circuit was concluding that § 201 should be used to define bribery even when the defendant is not a federal official.

The Government suggests that, in United States v. Sun-Diamond Growers of California , the Supreme Court set out a uniform definition for bribery. 526 U.S. 398, 404-05, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). As an initial matter, it is not clear the extent to which Sun-Diamond applies to the honest services wire fraud context, if at all. See Whitfield , 590 F.3d at 352-53 (declining to weigh in on a circuit-split as to whether it does). The Court fails to see how Sun-Diamond supports the Government's point, regardless. The Supreme Court noted that bribery under Section 201, unlike an illegal gratuity, "requires intent 'to influence' an official act or 'to be influenced in an official." See Sun-Diamond , 526 U.S. at 404-05, 119 S.Ct. 1402. At most, this means that bribery must at least require "a quid pro quo -a specific intent to give or receive something of value in exchange for an official act." See ids="11133273" index="117" url="https://cite.case.law/us/526/398/#p404">id. It does not mean that bribery cannot or should not include additional elements that state or federal legislatures may deem appropriate. See Whitfield , 590 F.3d at 350-51 (discussing Sun-Diamond to the extent it informed whether the Mississippi statute underlying the State Judges' honest services wire fraud charges amounted to bribery, while reiterating the holding in Brumley ).

The Government argues that, because the Supreme Court also cites United States v. Ganim , 510 F.3d 134, 147-49 (2d Cir. 2007), the Supreme Court was adopting the Second Circuit's choice to define bribery based on 18 U.S.C. § 201and 18 U.S.C. § 666 in an honest services fraud case concerning a local official. First and foremost, whatever the merits of the Government's argument, the Fifth Circuit has already found that Skilling "was establishing a uniform national standard by construing § 1346 to clearly exclude conduct outside of bribery and kickbacks, such as conflict-of-interest schemes, not to establish federal law as the uniform national standard for the elements of bribery and kickbacks in § 1346 prosecutions"). See Teel , 691 F.3d at 583. This argument is unconvincing, regardless. The Second Circuit explains that it only looked to 18 U.S.C. § 201and 18 U.S.C. § 666 since "neither party has argued that there is, or should be, any difference [between 18 U.S.C. § 666 and § 201(b)(1) ] of which we should be cognizant" before acknowledging that these statutes did differ. See Ganim , 510 F.3d at 148 n.7.

Because the Government also charges the Jordans with the violation of 18 U.S.C. § 666 as a separate offense, the Court's rulings largely apply to counts for those violations as well.

The Government's Proposed Instructions, in contrast, include the "to be rewarded" language (Dkt. # 122). The Government has not, however, responded to the Jordans' Objections and previously acknowledged (without necessarily adopting this potion) that use of this language could be improper (Dkt. # 93 at pp. 6-7).

This Order was written assuming that, consistent with the Jordans' oral representations to the Court, they object to the full "single motive" passage in the Government's Proposed Jury Instructions.

The Court notes that it may reconsider its determination on this instruction if presented with proposed instructions that correctly state the law, without additional commentary, on whether a single improper purpose is sufficient under 18 U.S.C. § 666.

In their prior objections, which the Court considers since the Jordans largely rely on past arguments they have made on this issue in their current set of objections, the Jordans state that, "[t]he government cannot seriously contend that the 'intimate sexual contact' in this case is anything like a conjugal visits or cases of payment in exchange for sex, i.e. where 'sexual services' can be assigned a monetary value" (Dkt. # 88 at p.11).